UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| LUCY HEATH, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 1:15-cv-209-jgm |
| : | |
| NANCY A. BERRYHILL, : | |
| Acting Commissioner of Social Security, : | |
| : | |
| Defendant. : | |
| _____ : | |

MEMORANDUM AND ORDER
(Docs. 8, 9)

I.   Introduction

Plaintiff Lucy Heath (Heath) brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the Commissioner of Social Security's (Commissioner) denial of her application for disability insurance benefits.  Pending before the Court are Heath's motion seeking an order reversing the Commissioner's decision (Doc. 8 (Doc. 8-1 Memorandum)), and the Commissioner's motion seeking an order affirming her decision (Doc. 9). Heath filed a reply in further support of her motion.  (Doc. 12.)  For the reasons set forth below, Heath's motion to reverse is granted, the Commissioner's motion to affirm is denied, and the matter is remanded for further proceedings and a new decision.

II.   Background

On March 26, 2013, Heath filed an application for disability insurance benefits alleging she became disabled on June 15, 2010.  (A.R. 18, 153.)  On June 20, 2013, her application was denied. (A.R. 93.)  Her request for reconsideration was denied on October 16, 2013.  (A.R. 99.)  Heath filed a timely request for an administrative hearing (A.R. 106), which was held by Administrative Law

Judge ("ALJ") Matthew Levin on December 11, 2014 (A.R. 18, 44-74). She appeared with a representative at the hearing and testified. Id.

On March 18, 2015, the ALJ issued a decision concluding Heath was not disabled within the meaning of the Social Security Act ("SSA") from the alleged disability onset date. (A.R. 18-32.) The Appeals Council denied her timely request for review on August 31, 2015, and the ALJ's decision became the final decision of the Commissioner. (A.R. 1.)

On September 28, 2015, Heath timely filed this action. (Docs. 1, 3.) She raises seven challenges to the ALJ's decision: (1) whether the incorrect last insured date in the hearing decision requires remand; (2) whether the ALJ properly evaluated her migraine headaches and associated limitations in the residual functional capacity ("RFC") finding; (3) whether the ALJ properly evaluated Nurse Finley-Bruno's opinion; (4) whether her depression was a severe impairment; (5) whether the ALJ properly evaluated Psychologist Nostrant's opinion; (6) whether the ALJ's credibility determination was supported by substantial evidence; and (7) whether the ALJ erred by concluding she could perform her past relevant work. (Doc. 8-1 at 2.)

Heath, born in May 1961, has a high school education and two years of college. (A.R. 47-48.) She worked as a para-professional (teacher's aide) at an elementary school for nine years until June 2010 when she was laid off during a reduction in force. Id. at 48, 51. She believes she was laid off because she often missed work as a result of her migraines. After June 2010, she volunteered sporadically at a library and worked from June 2007 until February 2013 at a friend's gift shop for less than ten hours per week. She testified her migraine headaches caused her to miss two to three days of work per month at the school, be unreliable at the library, and often limited her duties at the store. Id. at 50-54.

Heath treated with Nurse Practitioner Jessica Macleod regularly for recurrent migraine headaches. On March 18, 2010, she reported experiencing migraine headaches at least monthly.

2

(A.R. 381.) In January 2011, she reported continuing to have migraines a "couple" times per month but "not as severe as they once were;" if she felt one coming on, medicine usually aborted it and if it was still present in the morning, a different medicine would abort the headache. (A.R. 584.) In October, she reported an increased frequency of headaches (one headache/migraine every two weeks) (A.R. 570), and in December noted the headaches persisted and attributed them to stress (A.R. 566). In March 2012, she reported her headaches were "much diminished" (only twice per month from 4-6 times per week) (A.R. 300), and in April, noted she had no ER visits or hospitalizations in the past year (A.R. 304). In June, however, she reported not taking all her prescriptions because her insurance changed and she could not afford them; as a result, her headaches increased and she visited the ER for a headache. (A.R. 308.) In April 2013, she reported three ER visits in six months and noted she averaged two migraines per month with the last severe one in February. In May and June, she reported going to the ER for migraines, that generic medicine was ineffective, and her migraines occurred twice monthly on average. (A.R. 537-38.) By August, she reported her migraines were somewhat improved (A.R. 529), and in April 2014, her migraines were "relatively well-controlled," though she recently had a migraine with photophobia and nausea but had not had one in "awhile," (A.R. 673-74).

      Heath also treated at the Dartmouth Hitchcock Neurology Department for her migraine headaches. In August 2009, she reported headaches since 1983, worse since 1987, currently getting two per month each lasting three days. (A.R. 502.) In October 2009, she reported "a few" headaches a month but that she can tell the night before and medicine will abort the headache. (A.R. 500.) In June 2013, she reported severe headaches once per week generally lasting 3-4 days and medicine that used to help no longer does. Doctor Levin noted his impression of "analgesic rebound (medication overuse headache)" and depression. (A.R. 523-24.) In September 2014, she saw Nurse Practitioner ("NP") Joyletta Finley-Bruno because Dr. Levin was no longer at

Dartmouth. She reported a severe headache frequency of once per week generally lasting 3-4 days and she visited the ER for a headache since her June Botox treatment with Dr. Levin. (A.R. 688-89.) NP Finley-Bruno noted the plan to increase Botox treatments to every ten weeks. (A.R. 684.) In October, she reported 11 headaches since her September visit and that she had been to the ER but NP Finley-Bruno noted "per her headache calendar they are improving." (A.R. 701.)

In January 2015, in response to questions from Heath's counsel, NP Finley-Bruno stated that Heath would be absent or have to leave work during a headache attack which she would estimate as occurring 1-2 times per week or 6-8 times per month with a duration of one day per attack. (A.R. 723.) She prefaced her answers by noting she had only seen Heath three times. Id.

Heath also saw Heidi Nostrant, a licensed psychologist, regularly from March 2013 through May 2014 and again beginning in October 2014. (A.R. 635-46.) Psychologist Nostrant diagnosed major depressive disorder, moderate, recurrent and post-traumatic stress disorder, assigned Heath a Global Assessment of Functioning ("GAF") score of 65[1] and stated Heath had "marked" restrictions in activities of daily living and maintaining concentration, persistence or pace. (A.R. 712-14, 715-20.)

In an April 2013 Function Report, Heath stated she mainly spent her days watching television, had problems sleeping but no issues with personal care, including remembering to take medicine, prepared her own meals, went outside several times a week, including a weekly grocery trip, drove a car and could go out alone. (A.R. 195-98.) She noted her hobbies were watching television, reading and crocheting and she socialized weekly with a friend. Id. at 199. She had difficulty completing tasks and concentrating since she had been depressed. Id. at 200.

---

[1] A GAF of 61-70 corresponds to some mild symptoms. At the start of treatment in March 2013, Nostrant assigned Heath a GAF of 75. (A.R. 452.)

Heath's friend Sandra Darling, for whom she worked in the gift shop, noted in a job screening questionnaire Heath generally could do everything without problems but "when [Heath] experiences migraine headaches she waits on customers only, she cannot do any computer work, cleaning, breaking down boxes or help plan events which usually does easily." (A.R. 212-13.)

State agency professionals also opined on Heath's condition. At the initial disability determination, in June 2013, state agency physician Dr. Carl Runge stated her migraine headaches were not a severe impairment: the frequency did not meet the requirement for social security listing. (A.R. 79-80.) Also in June 2013, State agency psychologist Dr. Edward Hurley stated she did not have a severe mental impairment as she had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. Id. at 80-81. At reconsideration, in October 2013, state agency medical consultant Dr. Leslie Abramson stated Heath's migraines were not of listing level frequency, id. at 89, and state agency psychologist Dr. Joseph Patalano stated Heath did not have a severe mental impairment as she had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. Id. at 89-90.

At the hearing, a vocational expert testified that someone of a similar age, education and vocational background as Heath, without exertional impairments, who would be absent from work one day per month could maintain competitive employment. (A.R. at 68.) If the absences increased to two to three days per month, however, the person could not maintain competitive employment. Id. He testified employers would generally allow for two days off per month.

III.   Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

5

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). If the claimant is under a disability, and a substance use disorder is a contributing factor material to the determination of disability, the individual is not considered disabled. Id. § 423(d)(2)(C).

The Commissioner uses a five-step sequential process to evaluate disability claims. Butts v. Barnhart, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not, the ALJ determines whether the claimant has a "severe impairment." Id. §§ 404.1520(c), 416.920(b). If the ALJ finds the claimant has a severe impairment, the third step requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(d), 416.920(d). A claimant is presumptively disabled if the impairment meets or equals a listed impairment. Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." Id. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, Butts, 388 F.2d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In reviewing the Commissioner's disability decision, the court limits its inquiry to a "plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such a decision. 42 U.S.C. § 405(g). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Commissioner, as the trier of fact, resolves evidentiary conflicts and assesses credibility. See Richardson, 402 U.S. at 399. Under this "very deferential standard of review," once an ALJ has found facts, a court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." Brault v. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted); 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

IV.     Discussion

The ALJ determined at step one that Heath met the insured status requirements of the SSA through December 31, 2016. (A.R. at 20.) He next found she had not engaged in substantial gainful activity since June 15, 2010, the alleged onset date. Id. At the third step, the ALJ found Heath had the severe impairment of migraine headaches--her diabetes, depression and obesity were non-severe impairments–but the headaches did not meet or medically equal the criteria of a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 21-25. At step four, the ALJ determined Heath had the residual functional capacity to perform a full range of work at all exertional levels, though she would be absent from work one to two days per month, and was capable of performing her past

relevant work. Id. at 25-30. Finally, at step five, he found Heath was capable of making a successful adjustment to other unskilled work existing in significant numbers in the national economy as well. Id. at 31-32.

Heath first asserts the ALJ erred by finding her date last insured ("DLI") was December 31, 2016. (Doc. 8-1 at 4-6.) The Commissioner concedes this was error and her DLI is December 31, 2017. (Doc. 9 at 12.) The parties diverge over whether the error requires remand. Because the 2016 DLI is incorrect, it should be revised on remand to reflect the correct date of December 31, 2017. Mott v. Astrue, No. 5:10-cv-165, 2011 WL 4748345, at *3 (D. Vt. Oct. 6, 2011). Given the Court's analysis below, remand is appropriate on this issue.

Heath asserts the ALJ committed error in his assessment of her migraine headaches and in failing to include any work-related limitations in the RFC. (Doc. 8-1 at 6-14.) The ALJ concluded Heath's migraines were a severe impairment and included an RFC limitation that she would be absent from work one to two days per month. (A.R. 21, 25.) His review of the record consistently shows Heath experienced about two migraines per month and concluded the "migraines do impose some work related limitations as discussed." Id. at 26-30. Though he concluded Heath had work-related limitations stemming from her migraines, he did not include any such limitations in the RFC determination or the hypothetical posed to the vocational expert at the hearing. The ALJ also did not explain how he arrived at an absentee rate of one to two days per month when the objective medical record he cited showed two migraines per month--each of which according to Heath could last from two hours to five days--and frequent medical appointments which would presumably also necessitate absence from work. He noted he gave Heath "an opportunity to clarify inconsistencies with a statement from her . . . neurologist, [h]owever, she was unable to obtain his statement and did not submit clarification from another treating neurologist." Id. at 29.

An ALJ has an obligation to obtain necessary medical records to complete a proper assessment of a claimant's RFC. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). Medical records should include statements about what a plaintiff can still do despite impairments and the Social Security administration "will request a medical source statement about what you can still do." 20 C.F.R. § 404.1513(b). Here, the ALJ did not point to any medical records documenting what Heath's work-related limitations are or what she can still do despite her impairments or how often she would be absent from work. Accordingly, the Court agrees substantial evidence does not support the ALJ's determination of Heath's RFC.

Heath asserts the ALJ failed to give proper weight to the opinions of NP Finley-Bruno. (Doc. 8-1 at 14-17.) The ALJ explained he gave little weight to her opinion because she was not an acceptable medical source, she only saw Heath three times before giving her opinion, and her statements were inconsistent with the objective record. (A.R. 30.) NP Finley-Bruno herself stated she could not give "thorough" answers to counsel's questions because she "inherited" Heath as a patient and had only seen her three times. Id. at 723. The Court agrees the ALJ gave good reasons for affording her opinions little weight and gave the opinion proper consideration; accordingly, the Court cannot conclude the ALJ erred in affording limited weight to Finley-Bruno's opinions.

Heath asserts the ALJ committed error in failing to find her depression was a severe impairment and in rejecting the opinion of psychologist Nostrant. (Doc. 8-1 at 17-19.) The ALJ stated Nostrant was a non-acceptable treating source and afforded Nostrant's opinion very little

9

weight because it was based largely on Heath's self-reports and was not supported by the treating records. (A.R. 23-24.) It also conflicted with state agency consultants' opinions. As Heath points out, under the regulations, Nostrant, a licensed psychologist, is an acceptable medical source. See 20 C.F.R. §404.1513(a)(2) ("Acceptable medical sources are . . . Licensed or certified psychologists."). Inconsistency with other substantial evidence is a proper ground for not giving a treating source's opinion controlling weight. See Clark v. Comm'r, 143 F.3d 115 (2d Cir. 1998); 20 C.F.R. § 404.1527(d). The decision demonstrates the ALJ thoroughly reviewed Nostrant's notes. (A.R. 22-23.) Accordingly, the Court cannot conclude the ALJ erred by giving little weight to the opinion of Nostrant. Given the inconsistency of Nostrant's opinion that Heath had marked limitations with her treatment notes showing only mild limitations, i.e. GAF scores of 65-75, and the opinions of two state agency psychologists that Heath did not have a severe mental impairment, the ALJ's determination that Heath's depression was not severe is supported by substantial evidence.

Heath asserts the ALJ's adverse credibility determination is not supported by the evidence. (Doc. 8-1 at 19-25.) An ALJ must evaluate the credibility of a claimant and arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of symptoms. Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996) (citation omitted). Heath testified at the hearing that her migraine headaches caused her to miss two to three days of work per month at the school, be unreliable at the library, and often limited her duties at the store. (A.R. 50-54.) In his decision, the ALJ concluded Heath's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible." Id. at 28. The ALJ engaged in a lengthy discussion of the record noting treatment was generally effective except for when she was unable to afford her medications, she had periods of time spanning months without severe headaches, and she was able to work albeit with reduced duties while experiencing a migraine. Id. at 28-29. He also included an RFC limitation that she would be absent from work one to two days per month. The ALJ's lengthy

discussion does not explain how his conclusions are inconsistent with her testimony.  In light of the Court's determination regarding Heath's RFC, the Court declines to consider her claim the ALJ erred in his credibility determination.  Because the Court has determined the RFC was not supported by appropriate medical evidence, it is for the ALJ on remand to determine whether her statements are consistent with a properly supported RFC.

Lastly, Heath asserts the ALJ erred in finding Heath could return to her past relevant work. (Doc. 8-1 at 25.)  Given the Court's finding regarding Heath's RFC, and the vocational expert's testimony that employers would generally allow for two days off per month but if absences increased to two to three days per month, a person could not maintain competitive employment, the Court notes it is for the ALJ on remand to determine whether Heath can return to her past relevant work as a teacher's aide, or perform other work in the national economy, based on the RFC to be determined on remand.

IV.     Conclusion

For the reasons stated above, Heath's motion for an order reversing the decision of the Commissioner (Doc. 8) is GRANTED, the Commissioner's motion seeking an order affirming her decision (Doc. 9) is DENIED, and the matter is remanded for further proceedings and a new decision in accordance with this ruling.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 15th day of February, 2017.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge